In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3460

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ZENON GRZEGORCZYK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 320 — **Elaine E. Bucklo**, *Judge.*

ARGUED MAY 26, 2015 — DECIDED SEPTEMBER 1, 2015

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-appellant, Zenon Grzegorczyk, pleaded guilty to knowingly using a facility of interstate commerce with intent that a murder be committed, in violation of 18 U.S.C. § 1958(a), and to knowingly possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(a)(1)(A). The district court sentenced Grzegorczyk to a within-Guidelines sentence of 151 months, plus 60 months' imprisonment to run consecutively, for a total

sentence of 211 months' imprisonment. Grzegorczyk appeals his sentence, arguing that the district court (1) erred in refusing to apply § 2X1.1 of the United States Sentencing Commission Guidelines Manual to reduce his Guidelines calculation by 3 levels; (2) erred in failing to consider his mental health at the time of the offense; and (3) imposed a substantially unreasonable sentence. We affirm.

## I.  BACKGROUND

In April 2012, Grzegorczyk met with two undercover law enforcement officers posing as gun suppliers in order to procure firearms to ship to Poland. At some point during the conversation, Grzegorczyk asked the men to step outside, where he proceeded to tell them that he wanted to have killed certain individuals who he held responsible for his divorce and the loss of custody of his son. He explained that he would kill them himself, but that he needed an alibi. He also told the agents that another individual had offered to do the job for $2,000 per person, but that he didn't trust that person. The agents agreed to kill two individuals in exchange for $5,000 per person.

At the next meeting between the agents and Grzegorczyk, which took place a couple of weeks later, Grzegorczyk got into the agents' car and directed them toward the residences of his ex-wife and of two of his intended victims. He also showed the agents photographs of at least three individuals who he wanted killed, provided the agents with descriptions and license plate numbers of two of the intended victims' vehicles, and told the agents that he wanted the murders to be completed before a wedding in early June 2012, which the intended

victims were expected to attend. He then confirmed the $5,000 price per person and noted that, since there could be no witnesses, the number of victims could change depending on who was present when the agents arrived to kill the victims.

On May 2, 2012, Grzegorczyk met the agents and presented them with several photographs of additional victims who he wanted murdered, explaining that he wanted a total of six people killed. He told the agents that he wanted them to complete the murders carefully and reiterated the need for no witnesses. He then opened the duffle bag that he had carried with him, which contained $45,000 in cash, a 9mm semi-automatic firearm, and two magazines loaded with forty live rounds of ammunition. He showed the agents the contents of the bag and gave them $3,000 as a down payment for the murders. He also informed the agents that he intended to leave for Poland on June 8, 2012, and that the trip would provide his alibi for the murders.

On May 30, 2012, a federal grand jury returned a four-count indictment against Grzegorczyk, charging him with three counts of knowingly using a facility of interstate commerce with intent that a murder be committed, in violation of 18 U.S.C. § 1958(a) (Count 1 through Count 3), and one count of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4). Pursuant to a plea agreement with the government, Grzegorczyk pleaded guilty to Count 3 and Count 4.

At sentencing, Grzegorczyk's adjusted criminal offense level of 34, combined with his criminal history score of 0, yielded an advisory Guidelines range of 151 to 188 months'

imprisonment. Additionally, Grzegorczyk was subject to a 60-month consecutive sentence for the firearms offense in Count 4, bringing his total advisory sentencing range to 211 to 248 months. The government advocated for a sentence toward the middle to high end of the Guidelines range, based on the seriousness of the offense and the need to protect the community. Grzegorczyk urged the district court to impose a sentence of no more than 120 months' imprisonment and five years' supervised release. The district court sentenced Grzegorczyk to 151 months' imprisonment on Count 3, followed by a consecutive 60-month term of imprisonment on Count 4, and imposed a three-year term of supervised release on each count, to be served concurrently. This appeal followed.

## II. ANALYSIS

We review the district court's interpretation of the Guidelines *de novo,* and review for clear error the factual determinations underlying the district court's application of the Guidelines. *United States v. Harper*, 766 F.3d 741, 744 (7th Cir. 2014). We review *de novo* procedural errors that occur when a sentencing court "fails to calculate or improperly calculates the [defendant's] Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the basis for the chosen sentence." *United States v. Castro-Alvarado,* 755 F.3d 472, 475 (7th Cir. 2014). Finally, we review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Conley*, 777 F.3d 910, 914 (7th Cir. 2015). Sentences that fall within a properly calculated Guidelines range are presumptively reasonable. *Id*.

### A.  Application of U.S.S.G. § 2X1.1

Grzegorczyk's first argument is that the district court erred in refusing to apply § 2X1.1 of the United States Sentencing Commission Guidelines Manual ("U.S.S.G."), which, if applicable, would have reduced his base offense level by three. Section 2X1.1, titled "Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)," provides for a three-level decrease for solicitation "unless the person solicited to commit or aid the substantive offense completed all the acts he believed necessary for successful completion of the substantive offense … ." U.S.S.G. § 2X1.1(b)(3)(A). It also states that "when an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section," the sentencing court is to apply *that* Guideline section and not § 2X1.1. *Id.* at (c)(1). The district court held that § 2X1.1 is inapplicable to Grzegorczyk because his offense conduct is covered by another offense Guideline. We agree.

Grzegorczyk's offense conduct is specifically covered by § 2A1.5 ("Conspiracy or Solicitation to Commit Murder"), which, incidentally, is listed in the Application Notes to § 2X1.1 among the specific offense Guidelines that expressly cover solicitation. *See* U.S.S.G. § 2X1.1 cmt. n.1. Grzegorczyk does not appeal the district court's determination that § 2A1.5 applies to the underlying conduct of his offense, nor does he appeal the court's use of this section to calculate his base-offense level. He agrees that his offense conduct is covered by § 2A1.5 but argues that, since the offense was never carried through to completion, he is nevertheless entitled to a three-level reduction under § 2X1.1(b)(3)(A). In support of his argument, Grzegorczyk points to the commentary to § 2X1.1, which

notes that a reduction of three levels is appropriate "where an arrest occurs well before the defendant or any other co-conspirator has completed the acts necessary for the substantive offense." U.S.S.G. § 2X1.1 cmt. background.

Grzegorczyk's argument fails for two reasons. First, it ignores the plain language of § 2X1.1(c)(1), which instructs the court not to apply § 2X1.1 when a solicitation is expressly covered by another offense Guidelines section. Second, it fails to consider the fact that § 2A1.5 already accounts for instances where the acts necessary for the completion of the crime solicited have not occurred. This is evidenced by specific cross reference instructions directing the court to apply § 2A2.1 if the offense resulted in an attempted murder or assault with intent to commit murder (which would yield a base-offense level of 38) or § 2A1.1 if the offense resulted in the death of the victim (which would yield a base-offense level of 43). U.S.S.G. § 2A1.5(c). Accordingly, Grzegorczyk's claim as to the applicability of § 2X1.1(b)(3)(A) to his sentence fails.

## B. Grzegorczyk's Arguments in Mitigation

Grzegorczyk's second argument is that his sentence was procedurally unreasonable because the district court failed to properly weigh the § 3553(a) factors in fashioning his sentence. Specifically, Grzegorczyk contends that the district court did not carefully or completely consider the evidence of his mental health status at the time of the offense and the impact of the subsequent trauma that he suffered at the Metropolitan Correctional Center.

At sentencing, the district court is obligated to consider the § 3553(a) factors and provide a record for us to review, but it is

not required to comprehensively discuss each of the factors. *United States v. Moreno-Padilla*, 602 F.3d 802, 811 (7th Cir. 2010). The court is also not required to discuss each factor in checklist fashion, *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005), nor extensively address non-principal arguments or "stock arguments that sentencing courts see routinely," *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008). *See also United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008) ("The court need not address every § 3553(a) factor in checklist fashion, explicitly articulating its conclusions regarding each one. Instead the court may simply give an adequate statement of reasons, consistent with § 3553(a), for thinking the sentence it selects is appropriate" (internal citations omitted)).

In this case, the sentencing transcript shows that the district court gave adequate consideration to Grzegorczyk's principal argument in mitigation, in accordance with § 3553(a). The principal argument advanced by Grzegorczyk at sentencing was that his conduct was not emblematic of how he "normally behaves." In support of this point, Grzegorczyk argued that his actions were brought on by the emotional trauma of his recent divorce, his history of alcoholism and a personality disorder, which was diagnosed by the doctor who evaluated his competency, Dr. Ostrov.[1] Contrary to Grzegorczyk's contention, however, the district court clearly considered this information in fashioning Grzegorczyk's sentence. After noting several mitigating factors, including the fact that Grzegorczyk had no

---

[1] Although Dr. Ostrov determined that Grzegorczyk was competent, Grzegorczyk argued that his personality disorder made him act out of character and behave irrationally.

criminal history and had received letters of support from many people, the court acknowledged his history of alcoholism and personality disorder. The court noted that they were both factors that it would weigh. However, the court found that Grzegorczyk was very serious about the murders he solicited the undercover agents to commit. Furthermore, Grzegorczyk committed the offense at age fifty-one—an age where, in the district court's opinion, individuals have more control over their emotions and are mature enough to think about the long-term consequences of their actions. Thus, even considering Grzegorczyk's lack of criminal history and the low rate of recidivism among his age group, the court found that his particular characteristics cut against his argument that his behavior would never manifest itself again. From the record before us, therefore, it is apparent that the court considered Grzegorczyk's arguments in mitigation, in light of the other § 3553(a) factors, and determined that any mitigating aspects of the defendant's mental health or conduct were outweighed by the seriousness of the offense and risk to the public.

### C.  Reasonableness of Grzegorczyk's Sentence

Grzegorczyk's final argument on appeal is that the district court imposed a substantively unreasonable sentence of 211 months' imprisonment in light of his age, risk of recidivism, and need for rehabilitation. Since Grzegorczyk received a within-Guidelines sentence, which carries a presumption of reasonableness, he must overcome a hefty burden to prove its unreasonableness. *See Castro-Alvarado*, 755 F.3d at 477; *United States v. Dachman,* 743 F.3d 254, 263 (7th Cir. 2014). To rebut this presumption he must demonstrate that his sentence is unreasonable when measured against the factors set forth in

§ 3553(a). *United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007); *United States v.* Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005). Because he has not offered a valid basis for rebutting the presumption of reasonableness that the within-Guidelines sentence enjoys, his final argument fails.

AFFIRMED