**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2016
Decided December 9, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1849

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:15-CR-30140-SMY |
| ALFONSO OCHOA-MONTANO, *Defendant-Appellant*. | Staci M. Yandle, *Judge.* |

**O R D E R**

Alfonso Ochoa-Montano, a native and citizen of Mexico, pleaded guilty to being in the United States without authorization after his removal. *See* 8 U.S.C. § 1326(a). He had been removed from the country four times, most recently in 2002 after a federal conviction for money laundering, an aggravated felony under the Immigration and Nationality Act. *See* 18 U.S.C. § 1957; 8 U.S.C. § 1101(a)(43)(D). He thus faced a statutory maximum of 20 years' imprisonment. *See* 8 U.S.C. § 1326(b)(2). The district court sentenced him at the top of the Guidelines range to 24 months. On appeal Ochoa-Montano contends that the judge overemphasized the need to deter future violations of § 1326(a) and gave too little weight to other sentencing factors. We reject this argument.

Ochoa-Montano was arrested in 2015 for a traffic offense in southern Illinois, and local police turned him over to immigration authorities. Before this arrest he had been removed from the United States four times. The first three times—twice in 1999 and again in 2000—he departed voluntarily after being detained. When he returned to the United States after the third voluntary departure, he was paid by a smuggler to harbor aliens who were on their way to other locations. He was caught and convicted in 2001 of money laundering, then removed on March 27, 2002, immediately after completing his 15-month sentence. He returned to the United States just days later.

Ochoa-Montano pleaded guilty to a charge of being unlawfully present in the United States following removal in violation of § 1326(a). He told a probation officer that he has three children living with ex-wives in Mexico and three more children in the United States. His three U.S. citizen children were born *after* he last entered the United States unlawfully. Ochoa-Montano was apparently living with the children's mother (a Mexican citizen) and her 17-year-old son from another relationship (also a Mexican citizen). Ochoa-Montano also told the probation officer that the couple's two oldest children are enrolled in special-needs classes at school and that the youngest, then 9, suffers from birth defects that have left him completely disabled and in need of full-time care. According to Ochoa-Montano, the 17-year-old left school to help support the family. The probation officer was unable to verify any of this information (language barriers prevented communication with Ochoa-Montano's girlfriend). Nor could the probation officer verify the defendant's claim of long-term employment with a flooring company; the company's accountant said that Ochoa-Montano had never worked there. Ochoa-Montano promised to supply medical records for his son but he never did.

The probation officer calculated a Guidelines imprisonment range of 18 to 24 months based on a total offense level of 13 and a criminal history category of III. She concluded her report by saying that she had "not identified any factors that would warrant a departure from the applicable sentencing guidelines range," though she also acknowledged that the district court could "consider a variance and impose a non-guideline sentence" based on the factors in 18 U.S.C. § 3553(a). At sentencing the district judge adopted the presentence report without objection. The judge then announced that she did not "intend to depart for any reason noted in the [G]uidelines manual" but would, "as always, consider the possibility of the appropriateness of any variances pursuant to 18 U.S.C. § 3553(a)." The government recommended a low-end sentence of 18 months to deter Ochoa-Montano from doing "exactly the same thing he's been doing for nine years." Defense counsel argued for either time served or a year and a day in prison. Neither side offered testimony or other evidence.

Defense counsel asked the judge to consider that the § 1326(a) violation was nonviolent and argued that the crime was mitigated by Ochoa-Montano's current family situation: The family lived in poverty and faced eviction, his youngest son is disabled and requires full-time medical attention, and his stepson had quit school to support his disabled brother. Counsel further asserted that Ochoa-Montano had known it was a crime to return to the United States but did so to help his family (though his children in the United States had not yet been born when he reentered in 2002, and his other children were in Mexico). Counsel insisted that Ochoa-Montano's criminal history was weighted too heavily in the Guidelines range because of the 8-level increase he received based on his conviction for an aggravated felony. *See* U.S.S.G. § 2L1.2(b)(1)(C). The lawyer added that Ochoa-Montano intended to apply for asylum and thus would be detained after completing his prison sentence while waiting for a decision on that application.

The judge acknowledged the general difficulty of fashioning a sentence "sufficient, but not greater than necessary" in light of the nature of the crime and the defendant's character. The judge was "not insensitive to Mr. Montano in terms of his family situation [and] his children" and acknowledged her belief that "he did what he did for his family." But she said that one of her "jobs is to impose a sentence that promotes respect for the law" and "a few of the factors in this case … st[ood] out more than others." She reasoned that although § 1326(a) is not a violent crime, it nevertheless is a "very serious offense." Ochoa-Montano's repeated illegal entries demonstrated that he does not respect the law, the judge elaborated, so "no departure or variance, certainly downward variance, [was] warranted here." The judge rejected the contention that the 8-level increase under § 2L1.2(b)(1)(C) was too harsh as applied to Ochoa-Montano, whom she described as the "poster child" for an upward variance. Ochoa-Montano's family situation, the court added, "may explain some things" but did not "excuse" his lack of "respect for the law." The judge concluded that a 24-month prison term was appropriate "because of Mr. Montano's history and characteristics in particular, the nature of his prior criminal history, the repeated reentries," and his complete "disregard for the law with respect to entry as well as apparently employment."

On appeal Ochoa-Montano asserts that the judge "did not properly consider the factors articulated in 18 U.S.C. § 3553(a) in imposing its sentence." As we understand his argument, however, what he actually contends is that the court should have weighed the § 3553(a) factors more favorably to him. Ochoa-Montano repeats the arguments he made in his sentencing memorandum and at the sentencing hearing, and he accuses the judge of prematurely announcing her intention to sentence him within the Guidelines range

and then sentencing him too harshly after fleetingly rejecting his grounds in mitigation. He also says the judge overemphasized the need to deter him from committing the same offense in the future.

A sentence within the Guidelines range, like this one, is presumptively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Grzegorczyk*, 800 F.3d 402, 405 (7th Cir. 2015). The sentencing judge must consider the § 3553(a) factors, *e.g., Gall*, 552 U.S. at 51; *United States v. Lockwood*, 789 F.3d 773, 781 (7th Cir. 2015), but what *weight* to give those factors is left to the judge's discretion, *see United States v. Melendez*, 819 F.3d 1006, 1013 (7th Cir. 2016); *United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013); *United States v. Busara*, 551 F.3d 669, 674 (7th Cir. 2008); *United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006). We do not conduct our own weighing of the § 3553(a) factors. *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015); *United States v. Gammicchia*, 498 F.3d 467, 469 (7th Cir. 2007).

Ochoa-Montano first criticizes the judge for announcing early on in the hearing that she intended to impose a sentence "within the suggested Guidelines." But that criticism mischaracterizes what the judge did. The judge actually said, in line with the probation officer's uncontested representation that no ground for a departure had been identified, that she did "not intend to depart for any reason noted in the [G]uidelines manual." But the judge immediately added that she would, "as always, consider the possibility of the appropriateness of any variances" pursuant to § 3553(a). What is more, there is no reason why a judge cannot have a particular sentence in mind after reviewing the presentence report and the parties' written submissions so long as the judge is open to further argument during the sentencing hearing. *United States v. Dill*, 799 F.3d 821, 825 (7th Cir. 2015). And here the judge thoroughly addressed the points raised at sentencing. Ochoa-Montano does not contend otherwise.

What he does contend is that the judge relied entirely on the need to deter his conduct. This too misreads the record. The judge also discussed the need to promote respect for the law, for which Ochoa-Montano had shown "total disregard." And the judge was not unsympathetic to Ochoa-Montano's argument that he reentered the United States in 2002 to support his family. But she ultimately rejected Ochoa-Montano's attempt to use his family situation as an excuse and assigned greater weight to Ochoa-Montano's repeated criminal conduct, including not just his unlawful entries but also smuggling illegal aliens for profit and obtaining employment illegally. Ochoa-Montano does not like how the judge weighed the various factors, but

dissatisfaction with the weight given to the particular § 3553(a) factors is not ground for reversal. *Warner*, 792 F.3d at 856.

Finally, Ochoa-Montano asserts that the judge "fleetingly" rejected his arguments in mitigation, in particular "that [a sentence of] time served could be taken into account in order to render a downward variance." A "fleeting" rejection is not the same as a failure to consider an argument in mitigation. Once again, Ochoa-Montano simply expresses disagreement with how the judge *weighed* his arguments in mitigation.

A district court need only address principal arguments in mitigation, *Grzegorczyk*, 800 F.3d at 406; *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009), and most of the arguments advanced by Ochoa-Montano are "stock arguments" that could have been passed over without comment, *see United States v. White*, 582 F.3d 787, 798 (7th Cir. 2009); *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008); *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). The argument Ochoa-Montano singles out here—that his time spent in pretrial detention should have been considered—is not a principal argument in mitigation. Counsel exaggerates its importance to the sentencing as a whole: It is mentioned in just two sentences in the 27-page sentencing transcript. During the sentencing hearing, Ochoa-Montano's principal argument was that he deserved a lighter sentence based on his family's hardships, including their poverty and their disabled son. The judge took into consideration Ochoa-Montano's family situation but concluded that "just like anybody else's family situation," it did not excuse his crime.

As to Ochoa-Montano's contention that his sentence is simply too harsh, especially given that the government recommended less time, we note only that a district judge has great discretion in sentencing, even within the guidelines range. *United States v. Rushton*, 738 F.3d 854, 861 (7th Cir. 2013). That discretion was properly exercised in this case.

AFFIRMED.